```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
BRUCE BRYANT,

                    Petitioner,                MEMORANDUM AND ORDER
         -against-                              Case No. CV-05-1641 (FB)

WILLIAM PHILLIPS, Superintendent,

                    Respondent.
------------------------------------------------------------x
```

*Appearances:*
*For the Petitioner:*
BRUCE BRYANT, *pro se*
#96-a-5569
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, New York 12589

*For the Respondent:*
RICHARD A. BROWN, ESQ.
District Attorney, Queens County
By: MERRI TURK LASKY, ESQ.
Assistant District Attorney
125-01 Queens Boulevard
Kew Gardens, New York 11415

**BLOCK, Senior District Judge:**

Petitioner Bruce Bryant ("Bryant") seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 following his conviction in New York Supreme Court, Queens County, of murder, attempted murder, and firearm possession charges in connection with a 1993 shooting at a beauty salon in Queens that resulted in the death of an eleven-year-old boy. In Bryant's initial *habeas* petition, he claimed that (1) the state appellate court erred in rejecting his claim that his Sixth Amendment right to counsel was violated by an investigatory line-up; (2) the state trial court failed to conduct an adequate inquiry into his request for substitution of counsel; and (3) he was deprived of his right to effective assistance of counsel. He later amended his petition to add an additional ground in

1

support of his ineffective assistance of counsel claim, and to add a new claim: that (4) the prosecution failed to disclose *Brady* material, namely the full criminal history of prosecution witness Roy Williams ("Williams"), and knowingly relied on Williams' allegedly "perjured" testimony regarding that criminal history.[1]

**1. Sixth Amendment Right to Counsel Claim**

The New York Appellate Division reviewed Bryant's claim that he was improperly denied counsel at an investigatory line-up, and found that, "under the circumstances of this case, any error was harmless beyond a reasonable doubt in light of the overwhelming evidence of the defendant's guilt." *People v. Bryant*, 765 N.Y.S.2d 276 (N.Y. App. Div. 2003). As the Second Circuit has noted, a *habeas* court, "in reviewing a state court's harmless error determination...only may reverse determinations that are objectively unreasonable." *Zappulla v. New York*, 391 F.3d 462 (2d Cir. 2004). The Appellate Division was not objectively unreasonable in its determination that the line-up identifications, even if erroneously admitted, did not contribute to the verdict. In addition to the line-up identifications, Bryant testified that he was present at the scene of the crime when the shooting occurred; further, the prosecution presented two additional witnesses who identified Bryant in court, one of whom testified that Bryant was one of two men who fired at the beauty salon, and the other of whom testified that Bryant was walking toward the

---

[1] The Government contends that the issues raised in the amended petition are barred by the statute of limitations and do not "relate back" to the issues raised in the initial petition; because the Court decides all of Bryant's claims on the merits, it need not address these procedural questions.

2

salon with his gun drawn. The line-up identifications were not crucial to the prosecution's very strong case against Bryant; the Appellate Division's harmless error determination was therefore reasonable, and the Court will not countermand it.

**2. Substitution of Counsel Claim**

Though the Sixth Amendment guarantees indigent criminal defendants the right to counsel at trial, the Supreme Court has explicitly "reject[ed] the claim that the Sixth Amendment guarantees a 'meaningful relationship' between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 14 (1983). "[W]here a defendant voices a 'seemingly substantial complaint about counsel,' the court should inquire into the reasons for dissatisfaction'" to determine whether good cause exists for reassignment. *McKee v. Harris*, 649 F.2d 927, 933 (2d Cir. 1981).

Bryant requested substitution of counsel at two points during proceedings before the trial court; on each occasion, the trial court conducted an inquiry as to good cause for reassignment before declining to reassign counsel. First, Bryant complained, prior to the commencement of a suppression hearing, that counsel was not acting in his best interest, that he disagreed with counsel regarding the approach to the case, and that counsel had cut short certain conversations. After hearing Bryant's arguments, the court denied his motion for substitution of counsel, but informed Bryant that he could raise the issue again before the trial judge. Bryant did just that, filing a written motion for substitution of counsel in which he claimed that counsel tried to convince him to enter a plea, and had failed to conduct an investigation, visit him in jail, or make bail requests.

3

Prior to denying the motion, the trial court conducted a hearing, during which Bryant was afforded the opportunity to further explain his position. In each instance, the judge conducted adequate inquiry into Bryant's complaints before rejecting his motion.

### 3. Ineffective Assistance of Counsel Claim

Bryant's claims of ineffective assistance of counsel fail the two-prong standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). He claims that his counsel was ineffective because he failed to (a) move to suppress Bryant's line-up identifications on right to counsel grounds; (b) establish an attorney-client relationship; (c) effectively investigate the case, particularly because counsel failed to secure testimony from Bryant's girlfriend Kamini Ganga; (d) execute a defense strategy; (e) effectively cross-examine the prosecution's witnesses; (f) deliver a coherent summation; and (g) object at various times during trial. The record refutes these claims; in the face of the government's strong case, trial counsel vigorously represented Bryant, and ultimately managed to secure acquittals on an intentional murder count and three counts related to a separate shooting incident. Counsel's representation did not fall "below an objective standard of reasonableness . . . under prevailing professional norms." *Strickland*, 466 U.S. at 688; further, the overwhelming evidence against Bryant negates any "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

### 4. *Brady* Claim

"Suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The prosecution's obligation to disclose exculpatory evidence extends to evidence that could be used to impeach the prosecution's witnesses. *See Giglio v. United States*, 405 U.S. 150 (1971). In contending that the prosecution failed to disclose the full criminal history of prosecution witness Roy Williams, Bryant relies on research from the website rapsheets.com, which contains information concerning a Roy Williams born on October 5, 1960, as well as information concerning a Roy Williams born on August 31, 1963. Despite having the same name, these two individuals are different people; they have different dates of birth, different New York State Identification numbers, and, as discovered following a fingerprint comparison performed by the New York State Division of Criminal Justice Services at the Government's request, different fingerprints. The prosecution did not withhold from Bryant any criminal history information concerning the Roy Williams who testified at Bryant's trial; thus, his *Brady* claim is meritless.

Bryant's § 2254 motion, as amended, is denied. Because Bryant has failed to make a substantial showing of the denial of a federal right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253.

**SO ORDERED.**

/S/
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
December 11, 2007